## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RICHARD DEVIN**<br>    **Plaintiff**<br><br>**v.**<br><br><br><br>**GC SERVICES LIMITED PARTNERSHIP**<br>    **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL ACTION**

**COMPLAINT**

**JURY TRIAL
CLAIMED**

**JUNE 8, 2009**

### COMPLAINT

### I. INTRODUCTION

1.   This is a suit brought by a consumer who has been harassed and abused by the defendant collection agency.  This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., and for intentional infliction of emotional distress.

### II. PARTIES

2.   The plaintiff, Richard Devin ("Richard"), is a natural person residing in Enfield, Connecticut.

3.   The defendant, GC Services Limited Partnership ("GCS"), is a Texas corporation and is licensed by the Connecticut Department of Banking as a Consumer Collection Agency.

### III.  JURISDICTION

4.  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

5.  This Court has jurisdiction over GCS because it engages in debt collection activities within Connecticut.

6.  Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

### IV.  FACTUAL ALLEGATIONS

7.  In November of 2008, GCS began contacting Richard in an attempt to collect from him an alleged debt related to a Bank of America credit card.

8.  On or around November 10, 2008, GCS called Richard at his workplace and left a message; a receptionist at Richard's workplace took the call, and she told the GCS representative that Richard was not permitted to receive personal calls.

9.  On or around November 14, 2008, GCS again called Richard's workplace, but this time the call was put through to Richard; during that call, Richard told GCS that he was not permitted to receive personal calls at work.

10. On or around November 18, 2008, GCS again called Richard's workplace, which call was also put through to Richard, and although the GCS representative who called hung up before Richard could get to the phone, Richard knew it was GCS that had called because the receptionist took the information down before she transferred the call.

11. On or around November 24, 2008, a GCS representative named "Denny" called Richard's workplace and was put through to Richard, and during that call, Denny told Richard that Bank of America was "ready to take him to court."

12. On or around November 26, 2008, GCS again called Richard's workplace and spoke to a receptionist working there at the time.

13. GCS again called Richard's workplace on or around January 5, 2009, and spoke with a receptionist, and the receptionist made a note of the call.

14. Around the same time as the aforementioned January 5th call, Richard's neighbor stopped by Richard's house and told Richard that he had received a call from a debt collector, and that said debt collector had instructed him to deliver the message and a phone number to Richard.

15. On or around January 9, 2009, A GCS representative named "Crystal Hamlin" called Richard's sister, Jeanne, who is blind and who was living alone in Wethersfield at the time, and Crystal Hamlin left a message on Jeanne's answering machine stating that the call was for Richard Devin, and that it was important that he got back to her soon, and Crystal Hamlin also left a phone number on the message.

16. On or around January 15, 2009, Richard called back the number on the note that his neighbor had delivered, and he reached a GCS representative named "Charlene," and during that call, Charlene said that the debt called about related to his Bank of America credit card, and she verified Richard's phone number and address, and she asked him whether he still worked at American Honda, and she asked him what he did there for work, and she also asked about his take home pay and his mortgage, where he did his banking, and whether he could afford to make a payment of $7,000, and she said Bank of America would take further action against him unless he made a payment in that amount.

## V.  COUNT ONE
### Fair Debt Collection Practices Act

17. Plaintiff incorporates Paragraphs 1-16.

18. GCS violated the FDCPA in one or more of the following respects:

      a.      GCS violated 15 U.S.C. § 1692e(10) by telling Richard that Bank of America was ready to take him to court and would take further action against him unless he made a payment, thereby deceptively misrepresenting the imminence of suit;

      b.      GCS violated 15 U.S.C. § 1692c(b) when it called Richard's sister and left a message on her answering machine when it knew and had confirmation of Richard's address and telephone number.

      e.      GCS violated 15 U.S.C. § 1692c(b) when it contacted Richard's neighbor and left a message with that neighbor when it knew and had confirmation of Richard's address and phone number.

      f.      GCS violated 15 U.S.C. § 1692c(a)(3) by continuing to call Richard at his workplace even though it had been told repeatedly that it was not to continue to calling Richard at work because he was not allowed to take calls of that nature at work.

## VI.  COUNT TWO
### Connecticut Unfair Trade Practices Act

19. Plaintiff incorporates Paragraphs 1-18.

20. GCS violated CUTPA by its debt collection activities described above.

21. GCS's acts as described above were unfair, immoral, unethical, oppressive and unscrupulous and such as such to cause substantial injury to consumers.

4

## VII.  COUNT THREE
### Intentional Infliction of Emotional Distress

22. Plaintiff incorporates Paragraphs 1-16.

23. GCS knew, or reasonably should have known, that its conduct would likely cause emotional distress to Plaintiff.

24. GCS's conduct did cause Plaintiff to suffer emotional distress, embarrassment, shame, stress and anxiety.

25. GCS's actions were willful, wanton and malicious, in that it intended to cause Plaintiff distress to induce Plaintiff to pay the debt, in hopes that Plaintiff would pay in order to relieve the stress.

WHEREFORE, the Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k; monetary damages pursuant to Conn. Gen. Stat. §42-110g; punitive damages pursuant to Conn. Gen. Stat. § 42-110g; attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g, and such other relief as this Court deems appropriate.

**PLAINTIFF, RICHARD DEVIN**

By: _____

Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408; Fax. (860) 571-7457